USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/11/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>SVB Financial Group<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 25-cv-8572 (MKV)<br>Bankr. Case No. 23-10367 (MG) |
| JOINT OFFICIAL LIQUIDATORS OF SILICON VALLEY BANK (IN OFFICIAL CAYMAN ISLANDS LIQUIDATION),<br><br>Appellant,<br>v.<br>SVB FINANCIAL GROUP,<br><br>Appellee. | Case No. 25-cv-8598 (MKV)<br>Bankr. Adv. Case No. 24-4014 (MG)<br><br>**OPINION & ORDER AFFIRMING ORDER OF BANKRUPTCY COURT** |

The joint official liquidators (the "JOLs") of Silicon Valley Bank ("SVB")'s Cayman Islands branch ("SVB Cayman") appeal from a final order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") filed in both the underlying bankruptcy case, *In re SVB Financial Group*, Bankr. Case No. 23-10367 (MG) (Bankr. S.D.N.Y. Mar. 17, 2023) (the "Bankruptcy Case"), and a related adversary proceeding, *Joint Off. Liquidators of Silicon Valley Bank v. SVB Fin. Grp.*, Adv. Case No. 24-4014 (MG) (Bankr. S.D.N.Y. Jul. 24, 2024) (the "Adversary Proceeding"). *See* [ECF No. 1-1] (the "Bankruptcy Court Order" or "BCO").[1]

The JOLs filed an opening brief, [ECF No. 11] (the "Opening"), but failed to file the required appendix. *See* Fed. R. Bankr. P. 8018(b)(1) (laying out the "appellant's duty" to "serve

[1] Because the JOLs appeal from the BCO as entered on both the Bankruptcy Case and the Adversary Proceeding dockets, there are two related appeals, with a docket in each. *See* Case No. 1:25-cv-08572 (MKV) (S.D.N.Y. Oct. 16, 2025); Case No. 1:25-cv-08598 (MKV) (S.D.N.Y. Oct. 17, 2025). The JOLs failed to file a reply brief in Case Number 1:25-cv-08598 (MKV), but the briefing is otherwise identical across the two dockets, so the Court refers throughout to the docket in Case Number 1:25-cv-08572 (MKV).

and file with its principal brief an appendix containing excerpts from the record." (citation modified)). Appellee Federal Deposit Insurance Corporation (the "FDIC"), in its capacity as receiver for SVB, filed an answering brief, [ECF No. 17] (the "FDIC Answer"), attaching an appendix, [ECF No. 17-1] (the "FDIC App."). Appellee SVB Financial Trust ("SVBFT") likewise filed an answering brief, [ECF No. 18] (the "SVBFT Answer"), and an appendix, [ECF Nos. 17-1–12] (the "SVBFT App."). The JOLs replied. [ECF No. 20] (the "Reply"). The JOLs also filed a notice of supplemental authority, [ECF N. 22], to which the Appellees responded, [ECF Nos. 23, 24].

## BACKGROUND

The "sole area" of factual dispute in this appeal centers on the Bankruptcy Court's "timeliness and excusable neglect holdings." Opening at 31.[2] As further discussed below, the Court does not reach those holdings. Accordingly, the relevant facts are undisputed. The Court abbreviates the factual background, presenting only those facts necessary to its decision.

### I. Facts

SVB was a California-incorporated bank insured by the FDIC. BCO at 3. It accepted deposits at SVB Cayman—a branch of SVB that was not separately incorporated—under a license from the Cayman Islands Monetary Authority. *Id.* at 4–5. SVB Financial Group ("SVBFG") was SVB's parent company. *Id.* at 4. In the fourth quarter of 2022, shortly before the SVB collapse, SVB distributed a $294 million dividend to SVBFG (the "Upstream Dividend" or "Upstream Distribution"). *Id.* at 6.

On March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed the FDIC as its receiver. *Id.* at 7. On March 17, 2023, SVBFG filed a

[2] When citing the Parties' briefs, the Court refers to the native pagination.

voluntary chapter 11 petition with the Bankruptcy Court. *Id.* at 4. Its reorganization plan was confirmed in August of 2024. *Id.* SVBFT is the successor to SBVFG under the chapter 11 plan of reorganization. *Id.*

Shortly after SVB entered receivership, then-Treasury Secretary Janet Yellen invoked the "systemic risk exception," allowing depositors at the FDIC-insured SVB to recover beyond the usual $250,000 cap. *Id.* at 7. She did not, however, lift certain geographic requirements. *Id.* at 7–8 (citing 12 U.S.C. § 1813(m)).

As SVB's receiver, the FDIC transferred substantially all of SVB's assets, including those of SVB Cayman, to the newly created Silicon Valley Bridge Bank ("Bridge"). *Id.* at 7. Thereafter, Bridge sold most of those assets—but not SVB Cayman—to First Citizens Bank. *Id.* at 8. The FDIC, as Bridge's receiver, took control of the SVB Cayman assets. *Id.*

After transferring the SVB Cayman deposits, the FDIC notified two categories of SVB Cayman accountholders that their balances with SVB Cayman were not, statutorily, "deposits"; instead, the status of those accountholders was that of general unsecured creditors junior to both insured and uninsured depositors. BCO at 9. A third category of SVB Cayman accountholders (together with the first two categories, the "Cayman Creditors") did not receive this notice, their balances having been granted insured deposit status. *Id.*

## II. <u>Procedure</u>

Certain Cayman Creditors filed a "winding-up application" with regard to SVB Cayman in the Grand Court of the Cayman Islands ("Cayman Court"). *Id.* The Cayman Court granted the application and appointed the JOLs. *Id.*

Thereafter, the JOLs petitioned the Bankruptcy Court for Chapter 15 recognition. Bankr. Case No. 24-10076 (MG) (Bankr. S.D.N.Y. Jan. 18, 2024), [ECF No. 1]. The petition was rejected

in an opinion subsequently affirmed by this Court. *In re Silicon Valley Bank (Cayman Islands Branch)*, 658 B.R. 75, 76 (Bankr. S.D.N.Y. 2024), *aff'd*, No. 24-cv-1871 (LGS), 2025 WL 448403 (S.D.N.Y. Feb. 10, 2025), *appeal withdrawn sub nom. In re Silicon Valley Bank*, No. 25-536, 2025 WL 2542152 (2d Cir. Aug. 20, 2025).

The JOLs also commenced two separate actions against the FDIC, one in the District of Columbia against the FDIC in its capacity as receiver, Case No. 24-cv-513 (D.D.C. Feb. 23, 2024), and one in the Northern District of California against the FDIC in its corporate capacity, Case No. 24-cv-8352 (N.D. Cal. Nov. 22, 2024). Both concern the "decision of the [FDIC] . . . to grant 'insured deposit' classification to certain account holders of [SVB Cayman], but deny similar classification to the remaining SVB Cayman account holders, and the unauthorized transfer of funds and credits associated with these accounts." Case No. 24-cv-513 (D.D.C. Feb. 23, 2024), [ECF No. 4] ¶ 1; Case No. 24-cv-8352 (N.D. Cal. Nov. 22, 2024), [ECF No. 39]. Each appears to have been dismissed for lack of standing by a short order, Case No. 24-cv-513 (D.D.C. Feb. 23, 2024), [ECF No. 48]; Case No. 24-cv-8352 (N.D. Cal. Nov. 22, 2024), [ECF No. 76], and the D.D.C. decision has been appealed, Case No. 24-cv-513 (D.D.C. Feb. 23, 2024), [ECF No. 50].

SVBFG—since replaced by SVBFT—also sued the FDIC in the Northern District of California, seeking return of nearly two billion dollars in deposits. Case No. 23-cv-06543 (N.D. Cal. Dec. 19, 2023); Case No. 24-cv-1321 (N.D. Cal. Mar. 5, 2024). In that litigation, the FDIC asserted a "setoff" affirmative defense for constructive fraudulent transfer concerning the Upstream Dividend. Case No. 24-cv-1321 (N.D. Cal. Mar. 5, 2024), [ECF No. 135] ¶ 142; *see also* Case No. 23-cv-6543 (N.D. Cal. Dec. 19, 2023), [ECF No. 175] at 54–57. The Northern

District of California very recently found for the FDIC on that affirmative defense after a bench trial. Case No. 24-cv-1321 (N.D. Cal. Mar. 5, 2024), [ECF No. 417] at 202–05.[3]

On the August 11, 2023, bar date in the Bankruptcy Case, the JOLs filed a proof of claim (the "First POC"). BCO at 17. On June 28, 2024, the JOLs filed an amended proof of claim against the Debtor's estate (the "Amended POC"). *Id.* at 19. Thereafter, on July 24, 2024, the JOLs filed a complaint commencing the Adversary Proceeding against SVBFG (the "Initial Complaint"). *Id.* at 20. On November 22, 2024, the JOLs filed a further amended proof of claim (the "Second Amended POC"). *Id.* On the same day, they also filed an amended adversary complaint (the "Amended Complaint").

Because it is not material to this appeal as decided, the Court does not recount the specifics of "the JOLs' whack-a-mole-inducing approach to asserting claims." *Id.* at 66. Nor, more generally, does the Court recount the full procedural history of the Bankruptcy Case and Adversary Proceedings.

## III. <u>The Bankruptcy Court Order</u>

The Bankruptcy Court determined that the JOLs' claims against the estate fell into three "buckets," based on the capacities in which the JOLs purported to assert them. BCO at 37–38. The Bankruptcy Court did not reach the merits of any of the JOLs' claims. *Id.* at 3 ("This opinion addresses *only* issues of standing and timeliness, not the merits of the JOLs' Claims." (emphasis original)). Moreover, as discussed in further detail below, the scope of this appeal is far narrower than the Bankruptcy Court Order. Accordingly, the Court here recounts the JOLs' claims only generically. In short, the "buckets" of claims presented to the Bankruptcy Court were: 1) claims

[3] The JOLs specifically ask that the Court take judicial notice of this docket, although they appear to have made a typographical error in so doing. Reply at 17 n. 4 (citing "Federal Rule of Evidence 201, and Bankruptcy Procedure 9017" in asking that the Court take judicial notice of "*SVB Fin. Group v FDIC*, (ND Cal Aug. 8, 2024, No. 23-cv-01321-BLF)").

"vested in the JOLs as Cayman 'officeholders'" (the "Officeholder Claims"); 2) claims "vested in SVB's creditors" (the "Creditor Claims"); and 3) claims "vested in SVB" (the "Company Claims"). BCO at 37–38.

Relying on at least three independent bases, Chief Bankruptcy Judge Glenn dismissed all of these claims. BCO at 99. Specifically, he held that the JOLs' adversary complaints and amended proofs of claim were untimely because they were filed after the bar date and did not relate back to the First POC, and equitable considerations favored dismissal. *Id.* at 62–68. Next, he held that the JOLs had abandoned any claims asserted in the First POC itself in subsequent filings. *Id.* at 67. Finally, he held that the JOLs lacked standing under both the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. 101-73, 103 Stat. 183, and Cayman law to pursue any of their claims. *Id.* at 72–99.

The FIRREA holding was broken into two parts. First, the Bankruptcy Court concluded that the JOLs lacked standing to assert the Company Claims and the Accountholder Claims because they belonged to the FDIC under Title 12, United States Code, Section 1821(d)(2)(A)(i) (the "Succession Clause"). BCO at 77–90. Next, the Bankruptcy Court concluded that the Officeholder Claims were barred by the jurisdiction-stripping provision codified at Title 12, United States Code, Section 1821(j) ("Section 1821(j)"). BCO at 90–93. As discussed further below, an even narrower aspect of this last holding is all that need be decided on appeal.

**STANDARD**

On an appeal from the Bankruptcy Court, a District Court reviews *de novo* conclusions of law, *see Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.*), 829 F.3d 135, 152 (2d Cir. 2016) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 228 (2d Cir. 2002)), and reviews findings of fact for clear error. *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000)).

## ANALYSIS[4]

The Bankruptcy Court Order and the Parties' briefing on appeal are voluminous, and the JOLs presentation of the issues has been mercurial, to say the least. Moreover, this appeal is merely one decision point in a vast and tangled ecosystem of proceedings. Nevertheless, over the course of the briefing, the relevant issues have been substantially culled. And, ultimately, in deciding this appeal, the Court is permitted by jurisdictional principles to reach only one of the issues that remain. To ensure that nothing slips through the cracks, the Court attempts below a summary of the issues presented—and their narrowing—before proceeding to its analysis.

### I. Issues Presented

The JOLs "have determined to limit this appeal solely to the . . . dismiss[al of] the JOLs Cayman-law-based claims to clawback the $294M [Upstream Dividend]" as reflected in the single-count Amended Complaint in the adversary proceeding (the "Claw-Back Claim"). Opening at 1. The Claw-Back Claim is for "Declaratory Judgment that [the] Upstream Distribution is Void and [for] Imposition of a Constructive Trust Under Cayman Law." Adv. Case No. 24-4014 (Bankr. S.D.N.Y. Jul. 24, 2024), [ECF No. 11], at 40.

> Nevertheless, the JOLs manage to identify all of the following issues on appeal:
>
> (i) whether (a) the Clawback Claims asserted via the Adversary Complaint were timely filed given the Appellee's plan bar date under circumstances where there is a relationship between the JOLs' timely filed proof of debt ("POD"), the [ancillary "official liquidation"], the SVB collapse, and the later-discovered Clawback Claims; and (b) in the alternative there was excusable neglect and no meaningful prejudice in respect of the JOLs' discovery-based delay of the Clawback Claims' existence? ("Timeliness Issue");
>
> (ii) whether the BCO erred in dismissing the Adversary Complaint, which constituted a property dispute as to the extent of the Debtor's Estate through a constructive trust claim and is a claim seeking distribution from the bankruptcy

[4] The Court declines to dismiss the appeal for "failure to comply with Rule 8014(a)." FDIC Answer at 1 (citation modified) (quoting *Ehrlich v. Commercial Factors of Atlanta*, 567 B.R. 684, 691-92 (N.D.N.Y. 2017); *see* Reply at 1 (insisting that the Opening "did include a statement of jurisdiction.").

estate, because the Bankruptcy Court lacked authority to shorten the relevant statute of limitations for such claims? ("Statute of Limitations Reduction Issue"); and

(iii) the ("Cayman Law Clawback and FIRREA Issue"), which involves the following assignments of error:

a. whether Clawback Claims may be asserted by the JOLs as ancillary liquidators under Cayman law in the United States, a "primary" jurisdiction;

b. whether the JOLs' assertion of the Clawback Claims violates 12 U.S.C. § 1521(j)'s[[5]] prohibition on Court interference with FDIC Receiverships given the defensive and inherently contingent "setoff posture" of the FDIC's dividend interest and the FDIC's in-court "use" offers;

c. whether, under 12 U.S.C. § 1821(d)(17) (the "FIRREA Clawback Claim Statute") the FDIC merely maintains a "superior" clawback interest such that the at-worst-inferior" JOL Clawback claims are not extinguished such that dismissal on "standing" grounds error; and

d. whether the Bankruptcy Court Opinion incorrectly analyzed the extra-territorial nature of the FIRREA Clawback Claim Statute.

Opening at 2–3.

Put more comprehensibly, the JOLs argue that the Cayman Court specifically authorized them to bring the Claw-Back Claim against SVBFG in the United States, *id.* at 15–21; that the FIRREA does not bar the Claw-Back Claim, *id.* at 21–27; that the Bankruptcy Court lacked authority to dismiss the Amended Complaint as untimely, *id.* at 27–31; and, relatedly, that the Bankruptcy Court erred in its factual determinations and legal analysis with respect to timeliness, *id.* at 31–35.

The FDIC's answer "focuses on the Appellants' lack of standing under Title 12 of the United States Code and . . . Cayman law to assert the Clawback Claims." FDIC Answer at 12.[6] As it happens, a large swath of this briefing has been rendered moot. On reply, the JOLs helpfully clarified that they "are **not** appealing the dismissal of any claims originally held [SVB], its

[5] This statutory provision does not exist. The JOLs intended to cite to Title 12, United States Code, Section 1821(j).

[6] The FDIC does not address timeliness, instead leaving that issue to SVBFT. *Id.* at 3 n.4.

shareholders or creditors," thus "eliminat[ing] much of Appellee FDIC['s] . . . arguments." Reply at 2 (emphasis original); *see also id.* at 15.[7]

Indeed, this clarification moots virtually all the arguments presented by the FDIC under the Succession Clause. FDIC Answer at 15–21. It also moots the JOLs' subsequent filing of supplemental authority concerning the Succession Clause, [ECF No. 22] (citing *Sjunde AP-Fonden v. Fed. Deposit Ins. Corp.*, --- F.4th ----, No. 25-720, 2026 WL 2416170 (2d Cir. Aug. 19, 2026)); *see* [ECF No. 24], except to the limited extent discussed below.

Finally, the JOLs have also abandoned their arguments under Title 12, United States Code, Section 1821(d)(17), Reply at 16, mooting another significant portion of the briefing. *See* FDIC Answer at 27–31; SVBFT at 42–44.

This leaves the Court with three live issues. First, whether or not Section 1821(j) strips the Court of jurisdiction over the Claw-Back Claim. FDIC Answer at 21–27; SVBFT Answer at 46–48.[8] Second, whether or not Cayman law would provide the JOLs with standing to assert the

---

[7] The Claw-Back Claim was itself spread across the three "buckets" discussed above. *See* FDIC Answer at 9 (identifying:

> i. company claims to recover the Upstream Distribution as an unlawful dividend under section 34(2) of the Cayman Companies Act . . . (the "Company Claims");
>
> ii. creditor's claims allegedly held by the Cayman accountholders under the Cayman Fraudulent Dispositions Act ("FDA") to recover the Upstream Distribution (the "Accountholder Claims") . . . ; and
>
> iii. claims available to joint official liquidators to avoid the Upstream Distribution under sections 145, 146, and 147 of the Cayman Companies Act (the "Officeholder Claims" and together with the Company Claims and the Accountholder Claims, the "Clawback Claims") . . . .

(citing BCO at 37–38)).

The Officeholder Claims to claw back the Upstream Dividend (defined already as the "Claw-Back Claim") are all that remain on appeal. Reply at 2.

[8] In addition to presenting timeliness arguments, SVBFT joins in the non-Succession Clause Title 12 briefing.

Claw-Back Claim in the United States. FDIC Answer at 47–50; SVBFT Answer at 50–56.[9] And finally, whether or not the Claw-Back Claim was timely. SVBFT Answer at 17–39.

The Court is "obligated to decide, as a threshold matter, whether FIRREA's" Section 1821(j) "deprive[s the Court] of subject-matter jurisdiction." *AP-Fonden*, 2026 WL 2416170, at *6 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 94 (1998)).[10] Because it does, the Court proceeds no further.

## II. <u>Section 1821(j)</u>

Section 1821(j) reads: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j).

The Bankruptcy Court held that, "the broad language of section 1821(j) . . . bars the JOLs from bringing the Officeholder Claims." BCO at 93. The Bankruptcy Court was "not able to find relevant precedent within this Circuit," so it made its determination on the basis of decisions from other jurisdictions. *Id.* at 91–93 (citing *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011 (8th Cir. 2013); *Hindes v. FDIC*, 137 F.3d 148 (3d Cir. 1998); *Radian Ins., Inc. v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. 08-2993, 2009 WL 3163557 (E.D. Pa. Oct. 1, 2009); *Hoxeng v. Topeka Broadcomm, Inc.*, 911 F. Supp. 1323 (D. Kan. 1996); *Furgatch v. Resolution Trust Corp.*, No. 93–20304, 1993 WL 149084, at *2 (N.D. Cal. April 30, 1993) (unpublished)).

[9] The JOLs' abandonment of any argument concerning their entitlement to bring the Claw-Back Claim on behalf of the Cayman Creditors seemingly moots a portion of this argument as well. *See* FDIC Answer at 50–51 (arguing that the JOLs are not agents of the Cayman Creditors under Cayman law).

[10] Conceivably, the question concerning the "operation of the Succession Clause" might be so "inextricably 'intertwined' with the jurisdictional issue" that it could be considered first. *AP-Fonden*, 2026 WL 2416170, at *6 (quoting *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 178 (2017)). In any event, as already noted, that question is moot.

The Parties have since presented the Court with precedent from within this Circuit. While relatively sparse, this precedent confirms the fundamental soundness of the Bankruptcy Court's reasoning.

It appears that the Second Circuit has had only two occasions to address the meaning of Section 1821(j). *See Volges v. Resol. Tr. Corp.*, 32 F.3d 50 (2d Cir. 1994), *cert. denied*, 515 U.S. 1162 (1995); *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992). On the first occasion, Section 1812(j) was held not to divest the Court of jurisdiction. *Id.* On the second, the Second Circuit held that it did. *Volges*, 32 F.3d 50. Ultimately, both decisions underscore the clear consensus that the provision is to be interpreted "broadly." *Nat. Res. Def. Council, Inc. v. Fed. Hous. Fin. Agency*, 815 F. Supp. 2d 630, 642 (S.D.N.Y. 2011) (citing *Volges*, 32 F.3d at 52), *aff'd sub nom. Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221 (2d Cir. 2012); *see also Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 493 (S.D.N.Y. 2009) (same).

In *Colonial Realty*, the Second Circuit was asked to decide whether an injunction issued to enforce compliance with the automatic bankruptcy stay of Title 11, United States Code, Section 362, violated Section 1821(j). 980 F.2d at 127. The Circuit held that it did not, because Section 1821(j)'s "ban upon '*court* . . . action . . .' does not inhibit the operation of the automatic *statutory* stay imposed by § 362(a)." *Colonial Realty*, 980 F.2d at 137 (citation modified, alterations original). This is the authority on which the JOLs principally rely, *see* Opening at 25–26; Reply at 16, but it does not support their position. *Colonial* stands for the straightforward textual proposition that Section 1821(j) applies only to court action.

In *Volges*, the Second Circuit was asked to decide whether Section 1821(j) barred the lower court from enjoining the Resolution Trust Corporation (the "RTC")[11] "from auctioning off mortgages it [had] previously contracted to sell to [the] plaintiff-appellee." 32 F.3d at 51. The Circuit held that it did, and the fact that the auction might have "violate[d] . . . state law" did "not alter the calculus." *Id.* at 52. This result followed smoothly from the "broad[] and unequivocal[]" text of Section 1821(j), which is "a direct manifestation of Congress's intent to prevent courts from interfering with the [FDIC] in the exercise of its statutory powers." 32 F.3d at 52.

Congruently with this textual analysis, other circuits have developed a two-part test to determine whether Section 1821(j) applies to a given situation. "The court must first determine whether the challenged action is within the receiver's power or function; if so, it then determines whether the action requested would indeed 'restrain or affect' those powers." *Dittmer*, 708 F.3d at 1017 (citation modified) (citing *Bank of America Nat'l Ass'n v. Colonial Bank*, 604 F.3d 1239, 1243 (11th Cir. 2010)).

Here, the Claw-Back Claim is within the FDIC's powers and functions. Congress expressly empowered the FDIC to, *inter alia*, "collect all obligations and money due [to SVB]," 12 U.S.C. § 1821(d)(2)(B)(ii); "preserve and conserve the assets and property of [SVB]," *id.* § 1821(d)(2)(B)(iv); and "realize upon the assets of [SVB]," *id.* § 1821(d)(2)(E). Accordingly, the Bankruptcy Court was clearly correct to view litigation seeking to avoid the Upstream Dividend as restraining or affecting a "core function of FDIC" as receiver. BCO at 90.

The FDIC need not even be presently exercising its powers and functions for Section 1821(j) to bar interference. *See Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 706

[11] "Under the Resolution Trust Corporation Completion Act, 12 U.S.C. §§ 1441a(m)(1) and (2), the RTC terminated on December 31, 1995. After that date, assets and liabilities held by the RTC as receiver were transferred to the FDIC[, which] succeeded RTC as receiver of all institutions currently under RTC receivership." *In re 19 Ct. St. Assocs., LLC*, 190 B.R. 983, 993 (Bankr. S.D.N.Y. 1996) (citation modified).

(1st Cir. 1992) (In order to safeguard "FDIC's ability to exercise its statutory powers efficiently and effectively," "creditors" cannot be permitted "to secure judicial review, in advance, of every action that the FDIC propose[s] to take."); *see also Radian*, 2009 WL 3163557 (Section 1821(j) bars claims against a third party that could affect the FDIC as receiver even when the FDIC as receiver "has not yet indicated its intent to pursue any claims" and "the interference is only hypothetical at th[e] time.").

Here, however, the FDIC ***is*** exercising a "core function" by seeking to avoid the Upstream Dividend in separate litigation. *See* Case No. 24-cv-1321 (N.D. Cal. Mar. 5, 2024), [ECF No. 135] ¶ 142. Indeed, moreover, while SVBFT correctly points out that "section 1821(j) does not only protect final judgments," SVBFT at 45, it appears that the FDIC has secured such a judgment in any event. *See* Case No. 24-cv-1321 (N.D. Cal. Mar. 5, 2024), [ECF No. 417] at 205 ("Because FDIC has established that, at the time of the [Upstream] Dividend, the Bank did not receive reasonably equivalent value and had unreasonably small assets, it has established that the [Upstream] Dividend was a voidable transfer.").[12]

To issue a declaratory judgment or establish a constructive trust under Cayman law in favor of the JOLs with respect to the Upstream Dividend, *see* Adv. Case No. 24-4014 (Bankr. S.D.N.Y.

---

[12] Against this backdrop, the JOLs' underdeveloped argument that the FDIC has somehow "abandoned" its attempt to avoid the Upstream Dividend is, at best, puzzling. *See, e.g.*, Opening at 14. The Court is persuaded by the Appellees' distinctions of the cases upon which the JOLs appear to rely in support of this argument. *See* SVBFT Answer at 45–46, 45–46 n.2 (distinguishing, *inter alia*, *In re Lewis*, 398 F.3d 735, 739–40 (6th Cir. 2005), on the basis that "that case turned on the fact that—over a period of 'nearly two years'—'there was no evidence that the FDIC had sought to exercise any of its powers vis-à-vis the debtor's property.'" (citation modified) (quoting *id.*)); FDIC Answer at 32 (same).

The Court does note that the Second Circuit very recently held that "the FDIC's defensive setoff rights, which do not entitle the FDIC to an award of affirmative relief against SVB Financial, do not appear to constitute a 'right to payment' within the meaning of the Bankruptcy Code's definition of 'claim,'" such that the FDIC was not required to file a proof of claim in the Bankruptcy Case in order to preserve them. *In re SVB Fin. Grp.*, No. 25-567-BK, --- F.4th ----, 2026 WL 2648091, at *4 (2d Cir. Sept. 9, 2026). The Circuit expressly did "not decide . . . whether the FDIC has an affirmative right to sue for the substantive claims underlying the setoff it asserts in this matter." *Id.* at *5 n.6. The Circuit's decision there does not alter the Court's analysis here.

Jul. 24, 2024), [ECF No. 11], at 40, would thus, at minimum, "affect" the FDIC's exercise of its powers or functions. *See* AFFECT, Black's Law Dictionary (12th ed. 2024) ("Most generally, to produce an effect on; to influence in some way."). By way of example, Title 12, United States Code, Section 1821(d)(11)(A) provides for the payment of "amounts realized from the liquidation or other resolution of" SVB according to a specifically enumerated "order of priority." 12 U.S.C. § 1821(d)(11)(A). According to the FDIC, "permitting the [JOLs] to assert *any* of the Clawback Claims for the benefit of the Cayman accountholders would enable them to circumvent the mandatory Title 12 priority distribution scheme." FDIC Answer at 26 (citation modified, emphasis original).[13]

Moreover, "an action can 'affect' the exercise of powers by an agency without being aimed directly at it." *Hindes*, 137 F.3d at 160. For this reason, other circuit courts have held that "the protections afforded to receivers in § 1821(j) extend to third parties." *Dittmer*, 708 F.3d at 1017 (citing *Hindes*, 137 F.3d 148; *Telematics*, 967 F.2d 703). Were Section 1812(j) unable to "preclude relief . . . against a third party," it would be unable to effectuate "Congress's intent to prohibit *any* interference, direct or indirect, with the functions of the receiver." *Dittmer*, 708 F.3d at 1017 (emphasis original).

---

[13] In *AP-Fonden*, the Second Circuit reiterated that a broadly worded jurisdiction-stripping provision of Title 12, United States Code, Section 1821***(d)*** not at issue here "bars 'only claims that could be brought under the administrative procedures of § 1821(d) [against the failed bank or the FDIC], not any claim at all involving the FDIC.'" 2026 WL 2416170, at *12 (quoting *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010). The Circuit was careful to note that its "analysis . . . concern[ed] only the claims before [it]." *Id.* n.30. Nevertheless, the Court here observes that, as discussed further below, the JOLs already ***have*** brought claims seeking recovery for the same Cayman Creditors against the FDIC under the administrative procedures of Section 1821(d). *Compare* Case No. 24-cv-513 (D.D.C. Feb. 23, 2024), [ECF No. 4] ¶ 1 ("This action is brought in connection with the arbitrary decision of the [FDIC] . . . to grant 'insured deposit' classification to certain account holders of [SVB Cayman], but deny similar classification to the remaining SVB Cayman account holders, and the unauthorized transfer of funds and credits associated with these accounts.") *with* Adv. Case No. 24-4014 (Bankr. S.D.N.Y. Jul. 24, 2024), [ECF No. 11] ¶ 167 ("The [Upstream Dividend] resulted in particularized harm to Cayman depositors, the only customers whose accounts were subject to Cayman law, and the only non-insider customers with unsecured creditor status in the SVB Receivership under the FDIC application of the SRE.").

For the same reason, other circuits have also clarified that Section 1821(j) bars "not only . . . injunctive relief," but also "declaratory . . . and other equitable relief" where to award such relief would affect the FDIC's exercise of its powers or functions. *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007) (citation modified) (quoting *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) and citing *Tri–State Hotels, Inc. v. FDIC*, 79 F.3d 707, 715 (8th Cir. 1996)); *cf. In re SVB Fin. Grp.*, No. 23-10367 (MG), 2026 WL 1336033, at *20 (Bankr. S.D.N.Y. May 13, 2026) ("Section 1821(j) does not bar declaratory relief when a court is considering whether the FDIC[ as receiver] has an ownership interest in a claim," but only where it would "either compel the FDIC[ as receiver] to affirmatively act or rescind an otherwise existing right of the failed bank."). The JOLs' claim for "Declaratory Judgment that [the] Upstream Distribution is Void and [for] Imposition of a Constructive Trust Under Cayman Law," Adv. Case No. 24-4014 (Bankr. S.D.N.Y. Jul. 24, 2024), [ECF No. 11], at 40, seeks such relief. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) ("A constructive trust" is a remedy "in equity." (citation modified)).

The "sweeping ouster of courts' power" effected by Section 1821(j), *Courtney*, 485 F.3d at 948 (quoting *Freeman*, 56 F.3d at 1399), "is but part of a broader scheme enacted to allow the [FDIC] expeditiously to wind up the affairs of [failed banks] without judicial interference." *Volges*, 32 F.3d at 52. What's more, this ouster "does not leave" claimants "without a remedy"—or at least not without "due process," *Freeman*, 56 F.3d at 1403—because they can still "assert a claim for damages against the [FDIC] through the normal claims process." *Volges*, 32 F.3d at 53. Indeed, that appears to be precisely what the JOLs have done elsewhere. *See* Case No. 24-cv-513 (D.D.C. Feb. 23, 2024), [ECF No. 4].

The Court notes in closing that the JLO's slapdash "extraterritoriality" argument is meritless. *See* Opening at 27 (arguing that the Bankruptcy Court "erred in the extraterritorial analysis" because "it is a mere fortuity that the transferee in this case happens to be in a United States bankruptcy" (citation modified)); *see also* Opening at 22–23. How the JLOs could seriously argue that Title 12 lacks the geographic reach to cover this case is a mystifying question not answered by their briefing. "'If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application' of the statute, 'even if other conduct occurred abroad.'" *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 414 (2018) (quoting *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337 (2016)). "The activity underlying the claims at hand"—both the Upstream Dividend itself and the JLOs attempt to pursue the Claw-Back Claims in the Bankruptcy Court—"all occurred in the [United States]." BCO at 80.

**CONCLUSION**

For the foregoing reasons, the Bankruptcy Court Order is AFFIRMED. The Clerk of Court is respectfully requested to docket this Opinion & Order in cases 25-cv-8572 (MKV) and 25-cv-8598 (MKV) and to close both cases.

**SO ORDERED.**

Mary Kay Vyskocil

**Date: September 11, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**